*91 Opinion of the Court by
Judge Mills.
[Absent Chief Justice Bibb.]
The Administrators of John R. Chitwood brought this action of assumpsit against the appellant in the court, below and declared in four counts; to the whole of which, the appellant severally demurred. The demurrers were overruled, and a writ of enquiry awarded, and judgment was rendered against him on the assessment of damages; and to reverse it he has appealed.
No other questions present themselves except those which arise from the face of the declaration. The counts are all nearly the same in substance, or at least agree in the material facts, which areas follows:
An Act of the General Assembly passed on the 14th of December, eighteen hundred and twenty-one, entitled “an act for the benefit of the widow and heirs of John B. Chitwood,” authorizing his administrators to sell at public auction, certain pieces or lots of land, at a credit fixed by the act, taking bond and security for the price, and directing them, together with the widow of the decedent, to convey the land, and that the conveyance should pass the legal estate; that the sale should be made for the purpose of paying the debts of the decedent, and the price of the laud should be so applied by the administrators, and if any balance remained in their hands, it should be distributed as other assets, they first giving bond and security in the county court for the due execution of the duty and trust imposed on, and confided to them by the act.
They aver that they complied with all the requisitions of the act. and after proper notice, exposed to sale by auction, one of said lots, and the appel *92 lant became the purchaser, being the highest bidder, at the credits directed by the act; that he failed to give bond and security agreeably to the, terms of the, sale; that they, in conjunction with the widow of the the decedent, executed and acknowledged and tendered to him the conveyance in due form, but that he refused to complete the contract, and to execute bis notes with security according to the act, and terms of the sale.
Query—whether such a sale of land (of infants by commissioners under private statute,) is within the statute of frauds and perjuries.
In assumpsit for the price of land, defendant cannot avail himself of the statute of frauds and perjuries by demurrer.—He must plead it.
Act of 1812, raising unsealed writings to the dignity of sealed, does not effect the above rule.
*92 In one or more of the counts they aver that they actually conveyed; but in others they aver the tender of a conveyance, and as in the latter shape, the case is most favorable to the appellant, we shall in that form consider it.
The first ground on which the judgment of the. court below on the demurrer is resisted, is, that the contract for the sale of Lands set out in the declaration is by parol, and cannot be enforced by action, consistent with the provisions of the Act of Assembly, entitled “an act to prevent frauds arid perjuries.”
It might be a question, whether this sale directed by a special Act of Assembly, could come within the provisions of the general act.
But waiving that enquiry, we come to another Which precludes it, can the appellant avail himself of the act to prevent frauds and perjuries, on a demurrer to the declaration? It has been a long established rule, that on a demurrer to a declaration in assumpsit, that statute could not be relied on. The reason of the rule is, that although a declaration may not shew a writing, yet a writing may be given in evidence, in support of the declaration, sufficient to take the case out of the statute, and therefore, on demurrer, the court could not see that there was no writing.
The only way to get round the rule in this case, is by contending that the Act of Assembly, passed in 1812, 1 Dig. L. K. 264. which raised unsealed writings to the grade of sealed, and requires the same action to be brought on, and the same consideration *93 to be given to them, as sealed, has destroyed the rule, or removed the reason for it; and that as such writings must now become the foundation of the action, in debt or covenant, and not evidence to support it, and as assumpsit according to the repeated decision of this court, cannot be maintained on them, it follows that no writing sufficient to take the case out of the statute, can be presumed to exist, as the declaration shews none, and therefore the exception is good upon demurrer.
All writings by which the sale of land may be evidenced, are not raised by the statute to the rank of sealed instruments.
Purchaser of infant’s land sold under private statute, contends the act is unconstitutional and the sale void.
If the act last recited, brought every writing, unsealed, purporting to be an acknowledgment of a contract to the grade of a sealed instrument, there would be no escaping of this conclusion. But it is only those writings which, by a fair construction of the expressions used, stipulate “for the payment of money or property, or the performance of any act or acts, duty or duties,” that can come within this act, Now it can easily be perceived that there maybe writings acknowledging facts simply, and making admissions that premises and agreements have been made, which do not stipulate as the latter act requires, but may be such memorandums signed by the parties as will take the case out of the influence of the statute of frauds. They may be insufficient to base an action upon, and yet may be good evidence in assumpsit, to prove that there had been such promises.
The reason then, for not noticing the statute of frauds upon a demurrer to the declaration, although weakened, and rendered applicable to fewer cases, than it was before the Act of 1812, is not destroyed, and still exists, and still has its operation, and forbids an escape on demurrer, by the statute of frauds.
The remaining points relied on by the appellant, is, that the private Act of Assembly, authorizing the administrators of Chitwood, to sell the lands belonging to his infant heirs, and to convey them in conjunction with his widow, is unconstitutional, and therefore, inoperative and void, and that as he consequently could get no title to the land purchased by *94 their sale or deed, he had a right to disaffirm the contract as net obligatory on his part.
History of, and objections to the private states, directing the sale of infant’s lands.
Objection to such acts is that whilst the general laws restrain the volition of the infants, the particular laws dispose of their estates.—
But—
—Each act depends as to its constitutionality, on its own circumstances, and the objects of the legislature in passing it.
Preamble and provisions of the act in question.
■ The power of directing the sale of real estate of infants, descended to, or even devised to them, from their ancestor, or by their testator, has been frequently exercised by the Legislature of Kentucky, as will be evinced by an inspection of numerous private acts in our code. The exercise of such power has been, at least in one instance, resisted by the executive department; but has not been hitherto a subject of minute investigation in the judicial department. Indeed these acts are so various in their natures, and different in their circumstances and objects, that no one general constitutional provision could perhaps embrace the whole, and many must rest on their particular circumstances, and be opposed by different constitutional provisions. In the legislative department they have not been adopted without opposition arising from constitutional objections, and it is perhaps a matter of regret that so many have passed that body.
One great objection to them seems to be, that the power of infants over their real estate is denied to them by the general laws of the land, and while their own volition is thus restrained, and their hands tied, these special laws dispose of their estate without their concurrence, and without permitting them to he consulted, and whether the legislature can dispose of their real estate, or take it from them by laws which operate like the revocation of a grant, consistently with every constitutional provision, is a question of much importance.
But, as observed, the particular circumstance of each case, and the object of the legislature in making each act, may, and ought to be considered in deciding on each of these acts. We shall proceed to consider the provisions of the one now before us.
Its preamble recites that Chitwood died in debt, and considerably embarrassed, so that his personal estate would not be sufficient to pay bis debts, without selling the slaves of the estate, which would much more injure the widow and heirs than the sale, of the *95 realty. The act then directs the estate to be sold as described in the declaration; that the administrators shall dispose of the proceeds in discharge of the debts, and distribute the balance, if any, as other as sets in their hands, and that the widow and administrators shall unite in the conveyance.
Creditor has a moral lien on all the estate of the debtor, as the fund he bad trustee————The constitution having been adopted, inter alia, to secure the enjoyment of the right of property, required the enactment of law? to sell debtor’s estate for payment of his debts.——These laws being adopted by the consent of the community, debtor is estoped to deny he consents to them, and the alienation of his estate under them.
Acts authorizing commissioners to sell the estate, descended or devised to infants, to satisfy the debts of the decedent, to which the estate might be subjected by judicial preceedings, are constitutional.
*95 The power of the legislature to subject real estate to the payment of debts, cannot be questioned at this day. It was adopted by this state in its infancy, and has long received the sanction of every department of the government. Such estate is not only subjected in the bands of the debtor himself, but the law has pursued it in the hands of the heirs and devisees, and made them subject to actions on contracts in which they were not expressly bound, for the purpose of reaching the real estate to them descended or devised. After judgment against them, the officers of the law are directed to seize and dispose of it, and pass the title either temporarily, or forever, without consulting them or asking their Consent to these proceedings, and that on these plain principles, that the creditor has a moral lien on all the estate of the debtor, as the fund which he has trusted; and as the constitution is adopted for the express purpose of securing to the citizens, “the enjoyment of the right of life, liberty and property the end would not be answered if the debtor should be allowed to keep the “property” of the creditor, and also the fund to which be bad trusted; and "as the, general laws reaching that fund were adopted by the consent of the community, in accordance with the objects and purposes of the constitution, every individual is estopeo to say that he does not consent to this disposition of his estate for the purpose of paying his debts.
As this estate of Chitwood, therefore, was subject to his debts in the hands of his heirs, and might by a mode already pointed out by law, have been taken from them, we conceive that it was competent for the legislature to change that mode, and to direct the. administrators instead of the sheriff to expose and convey the estate to the purchaser, and supply the proceeds in discharge of the debts. Suc *96 h proceeding might probably be more beneficial to the heirs, and carried, with it the dower of the widow by her consent, Which “under the general law, could not be conveyed by the sheriff.
“Query — Of the validity of the statutes for the sale, of infant’s estates purpose than the payment of debts.
Objection to an act for the sale of the lands of the infant heirs for payment of the debts, that the personal estate might be sufficient, and the lands might escape, will not avail in arguments.
In coming to this conclusion, we Wish it under, stood, that we exclude any inference favorable to the legislative disposition of real estate for any purpose other, than an appropriation of it to debts which could reach it by the general laws of the land Other cases must.be left unprejudiced till a proper case occurs. We are aware that one objection, which presents a question of acknowledged difficulty presents itself against legislative transfers of estates, without the consent of the owner, and that is: is such a proceeding within the scope of legislative authority, or is it a power belonging to other departments of government hr to individuals themselves, and not granted by our compacts to either department? This we leave also till a proper case occurs for its discussion as we have. Seen that the power of subjecting estates to debts is within the compact, and already conceded to legislative authority.
The only plausible difficulty which could occur in the act before us, on the principles we have gone, is, that by the general laws Chitwood’s slaves were liable to his debts before his lands, and the act has caused his lands to change places with the slaves, and to become first subject without consulting his children, and thus far they are placed in a worse situation than under the general law. To this we answer that we cannot see on this demurrer and the face of the act, that this proceeding is in fact, more to their prejudice than the disposition of the slaves. The and expresses the contrary, and the appellant has not by any proper plea, shewn that such was not the fact. The amount of the debts of decedent is not shewn. It may be sufficient to take both land and slaves, and the slaves are not exempted by the act, and they may yet be sold, and it is impossible to tell that this transfer of the preference of estate te he first subjected by the act from the infants themselves to the administrators, has taken away their *97 rights. We know that both labels and slaves were subject, the slaves first, and the lands at last; but if the debts are sufficient to cover all. as all can be reached, we cannot say that any constitutional right of the infants is violated; for while the act seems to suppose that the slaves may be saved, it does not pretend to screen them, if the magnitude of the debts require them to go.
To raise the question of of the statute on such a case the fact of the fact of the sufficient of the personal estate must bc avered in pleasing and then query .
■Triplett, for plaintiffs; Barry, for defendant.
Whether, therefore, this argument ought or ought not to prevail, we need not now determine. For, if the appellant intended to rely upon it, he ought, by proper pleadings, to have shewn the amount of the debts, and that the slaves would have paid the whole, and that the legislature by placing the lands in front, had transferred them without the consent of tile heirs, and thus placed them in a situation where they must be taken away, when, had they been left under the general laws, they could not Slave been touched. Such an issue might have required of us an answer to this point, but we do not meet it in the record. For, if the debts are sufficient for the whole fund, and all must be taken, it is wholly immaterial which is taken first, and it was competent for the legislature to say that either might.
The judgment must, therefore, be affirmed witlr damages and costs.